Good afternoon, Illinois Public Court First District Court is now in session. The First Division, the Honorable Justice Michael B. Hyman presiding, case number 22-0151, Parwin-Ash v. PSP Distributions. Good afternoon to both of you. My name is Michael Hyman. With me is Justice Aurelia Allant. You can reserve some of your time and let us know how much time for rebuttal. If you each would introduce yourself, I would appreciate that. Good morning, Your Honors. My name, or good afternoon, Your Honors. My name is Matt DeRay for the Plaintiff Appellant. And how much time do you want for rebuttal? I would like, if it's 20 minutes, I would like to reserve seven minutes for rebuttal, please. Okay. And good afternoon, Your Honors. My name is Will Burns for the Appellees, and I'd hope you can hear me okay. Yes. Thank you. We're going to conduct this as if we were in the courtroom in that we will undoubtedly ask some questions. It may interrupt to get to our questions. If we do, finish your comment. And then if you go to our questions, we would appreciate it. And if you have any questions along the way of us regarding the procedure, let us know. Okay, Mr. DeRay, you may proceed. Good afternoon, and may it please the court. In this case, plaintiff alleges that she was deceived when she purchased defendant's Redford Naturals brand cat food because based on its label... We've read that. We've read everything. We've read the complaint and the record and all the appellate materials that were provided. So, very familiar with it. So, I'd like to ask you, in regard to the pet humanization trend, what's that have to do with this case? So, Your Honor, pet humanization causes pet owners to see their pets as human and want the best for them as far as... I understand what it is. You describe it, but I don't understand what that has to do with this case. Well, Your Honor, it's because flaxseed and flaxseed oil and ground and whole flaxseed and the benefits for humans are well known. And so, consumers take those biases and those understandings with them when they purchase pet food. How do you know that? What studies... Do you cite anything in your complaint that says that? Well, Your Honor, there are several articles on this phenomenon and there are several... I don't know what those articles are on the phenomenon, but those articles don't talk about cats and flaxseed, do they? Not specifically, Your Honor, but... Okay, so we're talking about a representation on a label and it has to do with flaxseed. Tell me what pet humanization has to do with anything? Well, Your Honor, as I mentioned, it's because consumers take these biases with them when they purchase these products. Now, I understand... Every consumer? All consumers? I mean, you say it's a trend. What's trend mean? Your Honor, the issue is that, you know, for purposes of a motion to dismiss on the pleadings, you know, these facts are to be accepted as true with all reasonable inferences drawn. We're talking about materiality. Yes. You've made allegations about pet humanization. What we have to look at, as you know, is the reasonable consumer, correct? Correct. Okay, so what does that have to do with pet humanization? If some people have pet humanization, what does that have to do with this case? Because, Your Honor, due to pet humanization, reasonable consumers have a particular preference as to what type of pet food products they want to buy and what they're looking for in a product. Where is that in any of the studies with regard to this case? I mean, where's the connection? I mean, we don't know what these studies are because you haven't given us the specifics with regard to flaxseed, but and I don't know, you say, are there any studies that say flaxseed is bad for cats? There are studies that say flaxseed is bad for mammals and animals. I don't know. I'm talking about cats. This is a case about cats. There's been studies of flaxseed with cats that the benefits and the harms are similar to other mammals and humans. Where is that in your complaint? Your Honor, there are allegations in the complaint that studies show this. Yeah, but you don't tell us what those studies are, so it's as good as being nothing. I mean, you can talk about whatever you want, but there's no specificity. How do we know? You're making allegations, and it's factual allegations. Where are the facts that a reasonable consumer considers their pets like a human being? Well, Your Honor, the allegations in the complaint are supposed to be accepted as true. I don't know the standard that requires plaintiffs to cite the studies and to provide the specific evidence of exactly what the studies and what they show are in connection with the complaint. Of course, at a later stage, whether it's summary judgment or at trial, a plaintiff would have to come forward with those and convince a fact finder that these facts are true. But for purposes of motion to dismiss, the standard is that these facts are to be accepted. I just don't know of any standard that requires these things to be pled and proved at the pleading stage. I mean, even if plaintiff provided thousands of pages of exhibits of different studies, for a motion to dismiss, is the judge supposed to go through, review all those studies, play the role of scientist, and analyze what the court thinks the conclusion to draw from those studies is? I disagree. I don't think that that's what the standard is. And I don't think that that's what the role of the judge at the motion to dismiss stage should be. Is it your position that materiality is immune from analysis at the motion to dismiss stage? It's not our position that materiality is immune from analysis. We're not suggesting that allegations of materiality, conclusory allegations need to be accepted carte blanche, where it just said, this is material to consumers. But if there are specific facts that say, here is why consumers find something to be material, because there are studies, because of pet humanization, because of the premium that these products command, those facts should be accepted as true. And drawing a reasonable inference from those facts, the reasonable inference is, in favor of plaintiff, that those facts steer consumer behavior. And those facts make consumers want to pay or want to purchase products that they believe have ground flaxseed. Now, on that point, I also- But you're making an allegation. First of all, as I understand it, your complaint is an omission case, correct? Well, Your Honor, I do want to clarify that point as far as the omission. It's not just that defendants failed to disclose the fact that there's whole flaxseed in their product. It's that they specifically say that the product contains ground flaxseed, which in conjunction with the fact that there's the omission, that there's no qualification or any sort of statement to make it to clarify that, well, yes, it technically contains ground flaxseed, but there's also whole flaxseed in there. Well, I understand. You used the word omission in making that answer, and you say it's not an omission case? I'm saying it's not purely an omission case. Yes, it's principally an omission. What affirmative statement do they make with regard to whole flaxseed? So with respect to whole flaxseed, there is no affirmative statement. You're right, Your Honor. Well, they don't say, as you repeat over and over, they never use the word only ground flaxseed, correct? That's right, Your Honor. They don't guarantee that there aren't whole flaxseed, is that correct? Your Honor, the one thing I do want to point out, and I want to draw the court's attention, because I'm not sure if it was included in the briefing, there's the Abizari case and the Heider case. Abizari is 215 Illab 2nd, 149 52, and the Heider case is 245 Illab 3rd, 258. And in those cases, they discuss how a statement that is technically true, but may nevertheless be materials, is a half-truth that is more misleading than an outright lie. And in those cases, they say such half-truths may support a claim for fraud. But we're not talking about, where in your allegations and your complaint do you talk about half-truths? Do you have the word half-truths there anywhere? In the complaint, yes. Where do you have the word half-truth? In the complaint, we don't specifically say the word half-truth. So we're not talking about a half-truth. But they do say that there's ground flaxseed, correct? They say there's ground flaxseed, and there is ground flaxseed, is that correct? There is ground flaxseed, yes, Your Honor. And in fact, we know, because it's in the complaint, that she contacted, your client contacted the company, and they knew that there were whole flaxseed. So I don't see where you're saying there was some kind of fraud when they knew exactly that there was whole flaxseed. And they said the reason why there was whole flaxseed is because of the manufacturing process. Is that correct? That's what the defendant claims, yes. Well, that's what they said, and that's what's in your complaint, isn't it? Yes, Your Honor. Okay. And you cite the various labeling statutes regarding animal food, don't you, in your briefs? That's right. Okay. And you know, of course, there's an exemption from labeling with regard to the migrating to food of different substances, right? Yes. Okay. So why doesn't this come within the exception that's in the paragraph that you do say? Well, Your Honor, we're not necessarily saying that, you know, as a matter of law, that these violated the food labeling standards. Well, I thought you said it's required. You use the word required, and you say that in your brief as well. So if it's required, that means there's a duty. Am I correct? It was required, but doesn't it have to be a duty? Isn't that what you're contending? Your Honor, the point we're trying to make through that is that because these laws, you know, specific labeling, when reasonable consumers view labels on food, whether pet food or human food, they expect to see a list of all the ingredients that are included in there. Isn't the ingredient included? Flaxseed is included. Well, ground flaxseed. It's flaxseed. Is it flaxseed or not flaxseed? Ground flaxseed is flaxseed. Whole flaxseed is flaxseed, correct? Well, but Your Honor, assumptions migrating to food from equipment or packaging or otherwise affecting food that are not food additives as defined in the Act are exempted. So where is this requirement that you talk about? So if defendant knew that whole flaxseeds were getting into its product, I would disagree that that's just a random migration of something that was totally preventable and sort of a hack. Well, where's that in your complaint? So they knew they were preventable? Well, Your Honor, I don't see how that's relevant to the issue of materiality or any of the other issues. Okay, what is relevant to materiality? What's relevant to materiality is that a reasonable consumer is willing to pay more for products that they believe have ground flaxseed and only ground flaxseed to the exclusion of whole flaxseed. How do you know that? Where is that? Are there many ways that somebody could decide to buy this product? Price might be something, maybe pet that has preferences, convenience. I mean, there's a lot of different factors that go into buying. It's not just this flaxseed, is it? You have to admit that flaxseed is one of many things that could go into somebody's mind, correct? Well, Your Honor, we include a price analysis in the complaint that shows... Well, but that price analysis doesn't prove a thing. That's something you... It's not done with any scientific or any kind of statistical analysis at all. We don't know when it was done or how it was done, except we have a chart. It doesn't mean anything, does it? Well, Your Honor, on the pleadings, it does mean something. And these are issues for summary judgment that would be decided at a later stage of litigation. But we're talking about materiality. There's a question of law, whether you have alleged facts sufficient to get to show materiality. And if I can answer my own question, I believe that why you put in pet humanization was to show materiality. Otherwise, I don't know why you would have it in there, because I don't think anybody's ever found an animal to say whether it's good or bad for them, whether they like it or not. We don't know if it's harmful to cats from based on your complaint. Well, Your Honor, I disagree. I think the facts alleged in the complaint do establish that and accept it as true. You're right, there could be a number of reasons for these things, but the reasonable inferences are to be drawn in plaintiff's favor. And so if the presence of whole or ground flaxseed, if that could be a reason, that inference should be drawn in plaintiff's favor. It's not a could-be analysis, that's not the standard that's been established by the courts, is it? Well, Your Honor, the standard is that all reasonable inferences are to be drawn in plaintiff's favor. Isn't that a plausibility standard? And I would argue that it certainly would be plausible that that could be the reason. Why would it be plausible for a reasonable consumer to focus in on whole flaxseed and cat food? Because they want the best for their cats, they want products that they think... Again, that's a conclusion that you're making. I mean, what facts have you alleged? Again, you have these studies, but you don't have anything behind those studies because we don't know what those studies are. You don't cite them specifically. So I'm trying to figure out the basis for your materiality. Your Honor, I feel like I've answered that question, but I see that I've gone over my time. So I'm... That's okay. Answer me. I don't want to... I'm not trying to cut you off. Go ahead. Well, Your Honor, that's... I understand Your Honor's point about that the studies aren't cited and that these facts may require further development. But for purposes of a motion to dismiss, it just seems like there's being a summary judgment standard is being imposed on a motion to dismiss requiring plaintiff to come forward with all the evidence, all the proof, all the... everything to affirmatively prove that these things are material as opposed to accepting the facts alleged in the complaint as true and drawing the reasonable inferences in plaintiff's favor. That's... Well, it depends on how you... how we state the question. To me, isn't the question whether the complaint alleges... makes a plausible showing that the omission was material. Isn't that the question? Does the complaint, looking at the complaint and taking it to your benefit, make a plausible showing that the omission was material? Isn't that the question before us? Yes, that's the standard. And I believe that the facts alleged in the complaint do make that showing. Like I said, there's... and Your Honor's taken issue with the price analysis and the pet humanization and all the other reasons. But those... No, I'm not taking... I'm not just... I'm asking you a question. I'm trying to see what you're pleading. I mean, what you're saying here, what your argument is. I'm testing your argument. I understand. But I'm... our argument is that those things are sufficient to draw that plausible conclusion, particularly in light of the inferences that need to be drawn in plaintiff's favor. I mean, there's a reason why there's a number of courts, there's a number of cases that hold that materiality is not something that can ordinarily be resolved on a motion to dismiss. And there's a reason why many of the cases, you know, that deal with materiality and the evidence used to show materiality, you know, are summary judgment cases or... Yeah, but we have to take the transaction. This is a different transaction, very different from the norm. Isn't it true in Illinois that an omission is not actionable, it's fraud, it gives rise to an incomplete as opposed to an affirmative false impression? I don't know if that's the case, Your Honor. I haven't... that's not my understanding of the case law. Okay, that's Phyllis v. DePaul, which is a 2014 appellate court case, which says that... also talked... there's another case, Pappas v. Pella Corporation, an omission is actionable only where it is employed as a device to mislead. Yes, Your Honor. Is that the law in Illinois? Yes, but I... as I cited earlier, there's the Abizari and the higher decisions, which, you know, mentioned that, you know, half-truths can be, you know, sometimes more misleading than an outright lie. But this... where is the half-truth? They don't say anything about hold. So I... and again, under the government regulations, this is... there's nothing wrong with this. You're the one that raised the regulations in your argument. The half-truth is the use of the term ground flaxseed. Had the defendant just said flaxseed, a reasonable consumer can take that to mean ground or hold. But the fact that the it's way to qualify and say the flaxseed in this product is ground flaxseed and didn't say... Is that true or not? Is the product made with ground flaxseed? Yes or no? There is ground flaxseed in the product. Is the product made... is that an ingredient, a primary ingredient of the product? Yes or no? It is. It is an ingredient in the product. Well, isn't it a primary ingredient of the product? Isn't that one of the leading ingredients or is it just... it's not a very important ingredient? Well, there's a difference between being a primary ingredient and being an important ingredient. I don't know. Okay. Well, maybe this is an insignificant ingredient then, the flaxseed? In terms of quantity, it may not be the main ingredient, but in terms of what it... the impression that it makes and the way that it drives consumers' purchasing behavior, it is significant. I mean, that's why consumers are willing to pay a premium for a product that's marketed as having ground flaxseed in it. So, unless there are any further questions, I will, you know, I guess defer to... You still have more time. We'll give you a year. Thank you, Your Honor. All right. You may proceed. Thank you. May it please the court, Will Byrne for the appellees. The basic failure of pleading in this case was correctly determined by Judge Horan in page five to six of her opinion below. Well, we know what she said, but there was knowledge that there were whole flaxseeds apparently in every can. And in fact, they were on top as well as all the way through the can. And your client knew about it. Why wouldn't that be something that a purchaser of the food would want to know? Well, I think in the first instance, in terms of the records as it stands, there are emails and there was a reference. It's an imperfect grinding process and occasionally whole flaxseeds get into the product. In terms of the quantity of the whole flaxseeds, I don't think that appears anywhere in the record. Well, it does say their allegation in the complaint, and they mentioned it just once, is the word significant. Significant. Okay, that's it. There can be significant and the reverse is insignificant. So insignificant would be a tiny amount. Insignificant would be more than a tiny amount. So they're saying that this is something that is more than insignificant since it's significant. Why wouldn't that be? If it's significant, why didn't this be disclosed if you knew about it? Well, I guess first of all, I think we disagree with the significance of it in terms of that the need for disclosure. I will point to a couple things. First of all, it's clear on the record that there was ground flaxseed. There's no allegation there was not. As Judge Horan found, they abandoned the affirmative fraud claim suggesting there was no ground flaxseed. No, no, we just went over that. So we know there's ground flaxseed. Okay. This whole thing has to do with either a half truth or an omission with regard to the whole flaxseed, correct? Well, I think an omission is all that it is. If you look at count three of their complaint below, it's only fraudulent concealment. There's no claim for affirmative fraud. Well, we're not on appeal. We're not talking about fraud. There's two counts on appeal. Okay. Common law fraud and consumer fraud. Right. Okay. So let's stick with it. Okay. I will point out also in terms of the question of there's been talk about the allegations of harm due to the presence of whole flaxseed. And as the court has pointed out, there's no specific evidence whatsoever. It's a mere conclusion. There's any risk whatsoever from whole flaxseed. I will point out in their reply brief, they essentially confirm that on page 12, where they state that the magnitude of the risk to pets has not been studied of whole flaxseed. But their argument is that because of this trend in pet humanization, people do look and want their pets to be healthy. And there's no benefit to whole flaxseed. Well, I think that the lack of benefit is obviously very different from the adverse health of impact, which is what they've suggested. But I will point out, first of all, as the court pointed out, there's no studies whatsoever identified that show any adverse health impact to either humans or pets of any kind. If you go through paragraphs 18 through 24, actually 25, which are the key paragraphs of the complaint, where the allegations about adverse health impacts are laid out, they don't suggest not only do they not identify a study, they don't identify a single adverse health impact that would affect either humans or pets. Do they have to? I would suggest in this case, they do. Because as the court found below, otherwise we're left with a mere conclusion. And that's the problem with the studies. Well, a conclusion as to what? A conclusion. Isn't there argument that the higher price is being paid because of the premium of ground flaxseed, and that this product includes both whole and ground? Well, and as the court below found out, those studies are essentially immaterial to the claims that are actually being brought. There's no allegation that this pet food actually did not contain ground flaxseed. There's no question it has ground flaxseed, okay? We're beyond that, okay? The issue has to do with the whole, that the defendants knew the process put in a significant amount of whole flaxseed, correct? That's their allegation. Whether it's true or not, why shouldn't this go to summary judgment? Why should it be dismissed on the motion to dismiss stage, and taking their allegation as true, why wouldn't we reverse? Well, it goes back to the reasonable person standard. And also, as I think counsel said in response to the court's question below, conclusory allegations need not be accepted carte blanche. Their primary and really only reason for suggesting that this pet food containing even a significant amount of whole flaxseed would be not acceptable to a reasonable consumer is that the whole flaxseed would have an adverse health impact on the pets. Well, I don't know about that. To me, when they talk about pet humanization, they're saying they want to treat their pets like they're members of the families, what I heard them say. Health benefits, there's some mention of that, but the major crux was they were willing to pay a higher price because it was ground flaxseed. Yes, and that's where I think it's important to say those studies should be out, because there's no allegation that these cans of pet food are not actually conferring the health benefits that those other cans of pet food that contain ground flaxseed have. Because, I'm sorry to reiterate, but they have not alleged that these cans don't actually contain ground flaxseed. The substance that's given... No, no, we're beyond it, okay? Yeah, okay. Okay, we've said that over and over. This is not a case about the absence of ground flaxseed. This is a case about the absence of disclosure of whole flaxseed, which is in the cans in which you knew about. Council, I have a question. Yes. Would this be a different case if it just said flaxseed, not ground, not any other kind, just flaxseed? Is there some reason why they couldn't just have said that? Well, I think it would not be a different case. I mean, I think in reality, whether there's some whole flaxseed together with the ground flaxseed is immaterial. I guess I'm not a flaxseed expert enough to answer that question, but it just seems to me that if you just put flaxseed, then you would avoid all these kinds of problems. I understand your question, Your Honor. I think that the reality based on the record we have without the studies that supposedly dictate to show any differences between ground and whole flaxseed in terms of nutrition. Well, I guess that's my question and inarticulately asked. Is there a big, huge difference between flaxseed, ground flaxseed, whole flaxseed? And how is this usually referred to it? You know, I mean, is it misleading to say ground when you're actually putting whole and ground? I don't believe it is. And I don't believe there's any basis from this record with any such studies to conclude that there's any additional adverse health impact. I mean, I can talk about a question for summary judgment. Isn't that a question for discovery? I don't believe it is. I think it's their burden to get Pat to show something other than mere factual conclusions and unidentified studies at the pleading stage. And they simply haven't done that. You're putting the emphasis on the lack of specific studies. Is that it? I mean, if there is one, what are the most important factors that are missing here? I guess one would be the studies that are unidentified. Yes, that is one. I would say the studies showing any adverse health impact are unidentified and isn't shown in their reply brief. There are no such studies that show an adverse health impact on pets from whole flaxseed. So they simply don't exist. They've made that admission. And the other side of the corn is any allegation whatsoever about an absence of a substantial amount of ground flaxseed sufficient to give the health benefit that they claim consumers look to look to find when they're purchasing pet food. So the allegation, as it stands, is that it does have ground flaxseed. They never bothered to quantify, to test the pet food that they had to determine how much ground flaxseed was in there. There's a number of things they could. They're not complaining about the amount of ground flaxseed. I'm not sure I followed this argument because their complaint has to do with a non-disclosure of the fact that whole flaxseed is a significant amount in the cans. Let me ask a question with regard to their reply brief that you haven't had an opportunity to respond to. They said defendants are required to accurately state the contents of the products that they manufacture and sell, especially when a consumer can't determine whether the actual contents contradict the express representations on the product's label until after the consumer buys the product and opens a can. What's your response? My response, first, as your Honor pointed out, the cited statutes simply don't require that. Secondly, as cases that we cited in pet food cases around the country, perfection is not to be anticipated by a consumer or required when it comes to the ingredients that are within pet food. So we've looked at cases around the country where heavy metals, herbicides, things like that happen to find their ways into pet food, and the courts have dismissed those cases at the pleading stage, finding there should not be an expectation for a reasonable consumer that there's a complete absence of other substances within the pet food. And I think even when it comes to the human context, I think of an example. If I buy a 10-pound bag of slivered almonds from the grocery store and a whole almond finds their way in, the thought of I have a consumer fraud claim and a nationwide class action does not immediately come to mind because it's not a reasonable reaction to that situation. What's your response to their creamy peanut butter? It's full of nuts. I think that's a very different situation. And I hate to go to my knowledge of whole flaxseed, but whole flaxseed, it's very small. They sell it at Whole Foods. They sell it at grocery stores. They sell it for human consumption. Whole peanuts, I tried to eat whole peanuts before at ballgames, and it doesn't work quite as well. So I think the hypothetical doesn't quite track. Okay. Anything else? They seem to have abandoned the idea that there's a subjective standard that should be measured under the consumer. I don't know if they ever went there. I mean, they talked about objective standard, and they replied briefly, but they were pretty clear, too. Okay, good. And I think to the same degree, they seem to have abandoned the idea that materiality must always be a question of fact and cannot ever be decided at the pleading stage. I think that today, counsel said there is not a carte blanche, that any statement can be material. I think those are important admissions and basically set up the idea that the circuit court was well within her rights to dismiss this case at the pleading stage. So unless there are any further questions, that'll be all from me, Your Honor. Thank you. Mr. Del Rey? Thank you, Your Honor. So a couple of points I would like to raise based on that. So first of all, as far as the studies go, and counsel mentioned that there may not be studies that show this, as Your Honor pointed out during defendant's argument, that's an issue for summary judgment. I mean, if there was a need to show, get a study, plaintiffs could, I mean, that's what expert witnesses are for. Plaintiff could commission a study. Plaintiff could get some expert in veterinary medicine to come in and opine on these issues. There's a reason why that's not necessary at the pleading stage, which it would be necessary at a later stage. And why summary judgment, why these issues are tailored for summary judgment. On that point, I would direct the court's attention to the Miller case, Miller versus Williams Chevrolet, where they talked about, well, the plaintiff said that he wouldn't have purchased this car had he known that it was used for rentals. And then he had an opinion witness, I think an expert come in and say, you know, consumers are willing to pay less for cars that are driven, you know, as rental cars prior to purchase. And so, you know, that sort of shows the way that the proof and the showings would progress and why, you know, at the pleading stage, it's premature to require plaintiff to come forward with the evidence that, you know, would be developed through discovery and through, you know, experts and that whole process. The other, the other thing, my problem with this is you are never in a million years going to ever come up with a study that says that flaxseed, the effect of flaxseed on animals. So who cares what the, what the effect is on a human being? You correct, explain to me how it matters, the effect on a human being isn't wouldn't you have to show that there was a negative effect on a cat? Well, Your Honor, first of all, I respectfully disagree with the notion that that we would never be able to come up with a study, because there are a lot of studies on on animals that show the effects of flaxseed and the benefits and harms. There's a lot of studies that show the effects of flaxseed on cats. That's what you're telling me on on animals. And I believe that some of them were performed on cats. And even if they weren't, it doesn't mean that such a study can't be performed. There's clearly the, you know, if they're able to do it on cows, you're not aware of any studies ever having been performed on cats. I'm not aware, but but for purposes of the complaint, we didn't do an exhaustive search. Your theory, you're kind of losing me on this theory, because don't you still have to prove or show or plead that it would have a negative effect on a cat? Well, Your Honor, that that would be that would be one way of showing it. And if Your Honor doesn't believe that the allegations on that point are sufficient, I'll get to the to the second part of Your Honor's question, which is that the studies that are performed on humans and which do show the negative effects of whole flaxseed and the lack of benefits, that's where the pet humanization thing comes in. And, you know, people bring those biases and those understandings with them when they when they purchase, you know, pet food or cat food, even if they're not necessarily, you know, based on a particular study that was done on cats. And one thing I want to know is that, you know, consumer preferences, you know, reasonable consumers sometimes may base and pay a premium for certain products based on a perceived benefit or what they believe to be a benefit of it. So, you know, take, for example, you know, organic or natural foods, you know, there's conflicting scientific evidence as to the benefit or the or, you know, how good it is for people. But it nevertheless motivates many consumers to pay more for it because they believe that, you know, organic or natural food is better for them. You know, same thing with, you know, so-called store brand versus brand name goods. The two products might be exactly the same. They might be made in the same factory and have no differences. But consumers put a reasonable consumer puts a premium on a brand name good, you know, simply because they believe that the brand name good is better. And so, you know, that's where this all kind of comes in. There's there's studies out there on other animals that are consistent with the studies that are done with humans. People view their cats as being as human. They view their pets as being human. And so that is what motivates their purchasing decisions. And that's what motivates them to buy pet food or cat food that is labeled as containing ground flaxseed. And that's why when they get cat food that contains whole flaxseed and a significant amount of whole flaxseed, they're completely unwilling to use it, even if it's not necessarily based on a specific study that says whole flaxseed is terrible for cats. It's all these other things that drive consumer behavior. And, you know, I understand that, you know, even if your honor has doubts about that position, you know, that's essentially what the province of the jury is. This can be, presented to a jury. And, you know, that's what their purpose is to take in these facts and make a determination. But at the pleading stage, it's certainly plausible, I would argue, that, you know, these facts, you know, taken together would motivate consumer preferences as evidenced by, you know, the price analysis that's included in the complaint. So I hope I answered your question on that point. You did. Thank you. Okay. And, you know, and I just mentioned a second ago with the last thing I'll say is that, you know, I know paragraph 66 of the complaint says, you know, there was a significant amount. And, you know, I understand that the record's not developed on this point, but this wasn't a single seed or two in the cat food. I mean, these were mixed throughout, you know, to me, it looked like a piece of rye bread or whole grain bread where, you know, there's seeds everywhere, that there was a substantial and serious amount that when the plaintiff saw it, she, you know, immediately, you know, turned up in disgust and refused to use it. So unless there's any questions, I will, I'll defer to the court. And, you know, we ask that the dismissal of the case be reversed. Thank you. I want to thank both sides for your hard questions that you and you both performed very well. So thank you very much. And have a good afternoon. We'll take case under advisement and be ruling shortly.